IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELBERT E. ROLLISON, | : |
| | :    C.A. No.: 06-159 SLR |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NEAL SHOEMAKER, as parent and legal guardian of TRAVIS SHOEMAKER, NEAL SHOEMAKER, individually, TRAVIS SHOEMAKER, individually, BLUE DIAMOND, LLC, a Delaware corporation, HOUGHTONS AMUSEMENT PARK, LLC, a Delaware corporation, JACK BRADY, individually and d/b/a KSR MOTOR SPORTS, and PARKWAY GRAVEL, a Delaware corporation, | : |
| Defendants. | |

### REPLY BRIEF OF PLAINITFF, DELBERT E. ROLLISON, TO DEFENDANTS, BLUE DIAMOND, LLC AND PARKWAY GRAVEL, INC.'s, MOTION FOR SUMMARY JUDGMENT

Plaintiff, Delbert E. Rollison, by and through his undersigned counsel, hereby respectfully requests this Honorable Court consider the attached Reply Brief in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

                                   DOROSHOW, PASQUALE,
                                    KRAWITZ & BHAYA

By:   /s/ Matthew R. Fogg
       ARTHUR M. KRAWITZ (ID No. 2440)
       MATTHEW R. FOGG (ID No. 4254)
       1202 Kirkwood Highway
       Wilmington, DE 19805
       (302) 998-0100

DATED: 12/11/2006       Attorneys for Plaintiff

# TABLE OF CONTENTS

|   | Page |
|---|---|
| Statement of the Nature and Stage of the Proceedings | 1 |
| Statement of the Facts | 2-5 |
| Argument | 6 |
| I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT | 7 |
| II. PLAINTIFF DID NOT INTEND THAT THE SCOPE AND EFFECT OF THE GENERAL RELEASE WOULD INCLUDE THE UNFORESEEABLE RISK THAT A TWELVE YEAR OLD WOULD BE ALLOWED TO STEER A RACE VEHICLE | 8-12 |
|     A. The Release is Ambiguous and Unclear as to Whether it Includes the Negligent Act that Resulted in a Twelve Year Old Driving a Racing Vehicle, or the Negligent Acts by the Minor | 8 |
|     B. Plaintiff Did Not Intend to Release an Unforeseeable Act of Negligence When He Signed the Release | 10 |
|     C. Defendants Interpretation of the General Release Would Violate Public Policy | 12 |
| III. THE AFFIRMATIVE DEFENSE OF ASSUMPTION OF THE RISK IS NOT SUBJECT TO DISPOSITON THROUGH SUMMARY JUDGMENT | 13 |
| IV. CONTRIBUTORY NEGLIGENCE, OR FAILURE TO KEEP A PROPER LOOKOUT, IS NOT AN APPROPRIATE BASIS FOR A MOTION FOR SUMMARY JUDGMENT | 14 |
| Conclusion | 15 |

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEDINGS

Plaintiff, Delbert Rollison, filed this personal injury action on March 9, 2006, seeking damages for injuries sustained in a July 3, 2004 incident at the Blue Diamond Park in New Castle, Delaware, after the plaintiff was struck by a mud dragster being operated by defendant, Travis Shoemaker, and being pushed by defendant, Neal Shoemaker.

Discovery is continuing and the parties have recently filed a Stipulation to Extend the discovery period in this matter.

On November 27, 2006, Defendants, Blue Diamond, LLC and Parkway Gravel, filed a Motion for Summary Judgment on the basis of a waiver signed by the plaintiff, assumption of the risk, and that the injuries were caused by defendants, Neal and Travis Shoemaker as well as plaintiff's own negligence.

This is Plaintiff, Delbert E Rollison's, Reply Brief in response to the motion for summary judgment.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

1

## **STATEMENT OF FACTS**

On July 3, 2004, Delbert Rollison attended a mud-drag racing event at Blue Diamond Park in New Castle, DE with his brother, Randy (Tr. Delbert Rollison at 24-25) (Attached in Plaintiff's Appendix). This was the first time that Mr. Rollison participated in or attended such an event and the first time he was ever at the Blue Diamond Park facility (Tr. Delbert Rollison at 24, 27).

Later in the evening of July 3, 2004, a woman came around to the groups in the parking area where the mud dragsters were located and presented a waiver for everyone to sign (Tr. Delbert Rollison at 36, 99). The waiver was passed around the group and everyone signed it. Mr. Rollison was the last person in his group to sign it (Id. at 36). Mr. Rollison did not read it before he signed it (Id.).

Mr. Rollison described the waiver as a generic legal form that you would sign before going to any type of sporting event (Id.). Mr. Rollison assumed that everyone who came to the event had to sign that document, although he was not sure (Id. at 115-117). Mr. Shoemaker testified that one couldn't race unless the waiver was signed and he too, did not read the waiver before he signed it and could only speculate as to what the release meant (Tr. Neal Shoemaker at 44-45). Mr. Rollison had never been presented with a waiver before except when he rode an elephant in a parade on one occasion (Id. at 37-38).

Mr. Rollison did have an understanding as to certain dangers involved in being in a close proximity to the racing vehicles (Tr. Delbert Rollison at 106). The associated danger is that of someone losing control of a racing vehicle while traveling at a high rate of speed (Id. at 107).

Mr. Rollison assumed the release was for in case something happened while people were following the rules or something like an engine blowing up and being hit by shrapnel or someone losing control of their vehicle (Id. at 102-103).

Before the mud dragsters began moving towards the "staging area", no one came around to discuss the events taking place or provided any other type of verbal instructions to the racers and crews (Id. at 51, 112, Tr. Neal Shoemaker at 14). When the mud dragsters left the parking lot to proceed to the track, Mr. Rollison was walking on foot to meet his brother who had already left towards the track (Tr. Delbert Rollison at 45).

Mr. Rollison proceeded with some other pit-crew members through a ditch, over a guard rail, crossed the paved roadway and then began walking in the same area people were walking throughout the day. The area was a small grassy area between the monster trucks and the path the mud dragsters were taking to the "staging area" (Id. at 47, 49). Mr. Rollison described the grassy walking area between the monster trucks and the mud dragster pathway as being approximately sixty feet wide (Id. at 50).

Mr. Rollison estimated that he was eight to ten feet from the path where the mud dragsters were being pushed or pulled to the "staging area" (Id. at 62-63). As he was walking on the pathway between the monster trucks and the mud dragster pathway, Mr. Rollison did not recall any of the monster trucks moving (Id. at 50). There was nothing separating the monster trucks from the dirt pathway the mud dragsters were taking (Tr. Neal Shoemaker at 27).

As he was walking on the grassy area between the monster trucks and mud dragster path with another gentleman, Mr. Rollison was struck from behind by a mud dragster owned by Neal

Doroshow, Pasquale, Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

3

Shoemaker that veered off the pathway into the area where Mr. Rollison was walking, causing Mr. Rollison to sustain personal injuries (Tr. Delbert Rollison at 57, 92-93).

The mud dragster that struck Mr. Rollison was steered by Travis Shoemaker, age twelve, and being pushed by his father, Neal Shoemaker with a 4-wheeler (Id. at 62). Mr. Shoemaker testified that, in general, you must be eighteen years old to race or sixteen with a valid driver's license (Tr. Neal Shoemaker at 17). Mr. Shoemaker testified that he and his son, Travis, were distracted by a monster truck "cowboying" to the left of them (Id. at 32).

Alan DeCarlo testified on behalf of Blue Diamond, LLC. Blue Diamond Park opened in 2003. Mr. DeCarlo represented that the promoter of the event, Jack Brady, entered into an agreement with Blue Diamond to pay $1,000.00 and additional monies based on the number of spectators. There was a fee for spectators to pay that was collected by Jack Brady and monitored by Blue Diamond Park. (Tr. Allan DeCarlo at 16). (Attached in Plaintiff's Appendix). Mr. DeCarlo believes it was his father, Ernie DeCarlo, who was in the ticket booth on behalf of Blue Diamond on the day of the incident. (Id. at 20-21). Mr. DeCarlo estimated that there were approximately 1,500 spectators for the July 3, 2004 event.

Mr. DeCarlo stated that the promoter of the mud-racing event, Jack Brady, had two previous shows at Blue Diamond. (Id. at 12-19). Both of the previous shows were in the same year as the incident at issue.

The area of Blue Diamond Park that was used for the event where the accident occurred had only been used by Jack Brady. No other events were held in the area. (Id. at 29-30).

The grounds used for the Brady events were maintained by Mr. DeCarlo for Blue Diamond. (Id. at 17).

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

4

Orange fencing separating spectators from the event field was erected by Blue Diamond Park. (Id. at 25).

Further separating the event field from the spectators was a concrete barrier composed of 'Jersey barriers." Blue Diamond provided these concrete barriers for the event by 'borrowing' them, and then kept them at Blue Diamond Park. There were approximately 35 of the 'Jersey' barriers, each weighing about six or seven thousand pounds. Mr. DeCarlo and the promoter, Jack Brady, conferred on where the barriers were to be placed prior to the first event promoted by Jack Brady and held at Blue Diamond. (Id. at 27-28).

Jack Brady then placed the barriers. (Id. at 29). The barriers were placed for the first event promoted by Jack Brady and then left there for the later Jack Brady events. The barriers were used by no other event. (Id. at 30).

Mr. DeCarlo stated that promoters and Blue Diamond generally signed a contract, a copy of which would be kept by Blue Diamond. He stated that he had personally looked in the folder in which the contract should have been, and the file folder was empty. (Id. at 62). Mr. DeCarlo stated that Blue Diamond required all event promoters to provide Blue Diamond with a certificate showing insurance coverage had been purchased. (Id. at 61). Again, no such document was within the folder in the possession of Blue Diamond. (Id. at 62).

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

## ARGUMENT

Mr. Rollison did not intend to release defendants from liability for injuries suffered as a result of a pre-adolescent steering a mud drag-racing vehicle. Plaintiff could not foresee that he would be injured because a twelve year old was allowed to steer a vehicle.

To be upheld by the courts, a release must be clear and unambiguous, it must be conscionable, and the release must not be contrary to public policy. The release here did not clearly and unambiguously release defendants for the particular harm that occurred, namely a child driving a racing vehicle. Further, it is unconscionable to hold as valid and enforceable, a release that would include unforeseeable and uncontemplated risks.

Additionally, a release is against public policy if it is unconscionable. Defendants suggested interpretation of the release is that the release included unforeseeable and unanticipated events, rendering the release so sweeping in scope that it would be against public policy.

It should be noted that defendants, Blue Diamond, LLC and Parkway Gravel, Inc, own the facility where the event was took place. Defendants had an agreement with the promoter, defendant, Jack Brady. The contract between the promoter and defendants, Blue Diamond and Parkway Gravel, has not been provided. Defendants received a cash payment for the event to take place at their facility.

The extent of the involvement between Blue Diamond, Parkway Gravel, and Jack Brady cannot be determined at this time. Discovery has been extended. Importantly, the deposition of the promoter, defendant, Jack Brady, has not occurred.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

6

## I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court examines the record to determine whether there is a genuine issue of material fact. See <u>Battista v. Chrysler Corp.</u>, Del.Super., 454 A.2d 286, 290 (1982). the moving party bears the burden of proving that no genuine issue of material fact is in dispute. See <u>Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In making this determination, the record must be viewed in the light most favorable to the non-moving party. <u>Borish v. Graham</u>, 655 A.2d 831 (Del. Super. Ct. 1994). The Court will consider depositions, answers to interrogatories, admissions, and affidavits in making its determination. <u>Super.Ct.Civ.R.</u> 56(c). Summary judgment may not be granted if there is a material fact in dispute or a further factual inquiry is necessary in order to clarify the application of law to the circumstances. <u>Ebersole v. Lowengrub</u>, 180 A.2d 467 (Del. 1962).

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

## II. PLAINTIFF DID NOT INTEND THAT THE SCOPE AND EFFECT OF THE GENERAL RELEASE WOULD INCLUDE THE UNFORESEEABLE RISK THAT A TWELVE YEAR OLD WOULD BE ALLOWED TO STEER A RACE VEHICLE

To be upheld by the courts, a release must be clear and unambiguous, it must be conscionable, and the release must not be contrary to public policy. See Hallman v. Dover Downs, Inc., C.A. No. 85-618-CMW (D.Del, 1986). If an individual signs an unambiguous, conscionable general release that is not contrary to public policy, then the individual assumes all known and unknown risks in a particular situation.

Where the language of a release is ambiguous, it must be construed strongly against the party who drafted it. See McDonough v. Nat'l Off-Road Bicycle Assn., D.Del., C.A. No. 95-505-SLR (1997).

### A. The Release is Ambiguous and Unclear as to Whether it Includes the Negligent Act that Resulted in a Twelve Year Old Driving a Racing Vehicle, or the Negligent Acts by the Minor

To determine whether a release is clear and unambiguous, the intent of the parties as to scope and effect of release are controlling. A court will attempt to ascertain intent from the overall language of the document. See Hallman v. Dover Downs, Inc., C.A. No. 85-618-CMW (D.Del. 1986).

Most importantly, evidence must also establish that the parties intended the release to apply to the particular conduct that caused the harm. This Court has previously denied a motion for summary judgment after determining that the particular harm suffered by a plaintiff was not within the foreseeable injuries contemplated by a general release. See Hallman v. Dover Downs, Inc., CA No. 85-618-CMW (D.Del, 1986).

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

The parties' understanding is key to determining whether or not the language is ambiguous. See Hallman at *3. "The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in light of all the facts and circumstances." See Hallman at *2.

Hallman is squarely on point to the facts here. In Hallman, this Court determined that the injury suffered by the plaintiff was not a risk associated with racing; rather the risk was associated with the maintenance of the facility. Here, Mr. Rollison was injured not by a risk associated with racing, but rather by a risk associated with an event being poorly planned, supervised, managed, and executed.

Mr. Rollison was injured because a pre-adolescent was allowed to steer a mud-racing vehicle. A pre-adolescent being allowed behind the wheel of a drag racing vehicle is not a risk associated with racing. Mr. Rollison did have an understanding as to certain dangers involved in being in a close proximity to the racing vehicles (Tr. Delbert Rollison at 106). Plaintiff understood the associated danger to be that of someone losing control of a racing vehicle while traveling at a high rate of speed (Id. at 107). Mr. Rollison assumed the release was for an injury that occurred while people were following the rules, or a mechanical malfunction, like an engine blowing up and being hit by shrapnel, or someone losing control of their vehicle (Id. at 102-103). Mr. Rollison did not and could not have an understanding that a child would be driving a racing vehicle.

Consequently, the release signed by Mr. Rollison is ambiguous in that Mr. Rollison did not intend to release a child driver.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

9

### B. Plaintiff Did Not Intend to Release an Unforeseeable Act of Negligence When He Signed the Release

The release signed under the circumstances of assisting at a mud-racing event did not relate to the harm involved, namely a child steering a vehicle. Mr. Rollison signed a release with the intention of releasing an injury that occurred while people were following the rules, or a mechanical malfunction, like an engine blowing up and being hit by shrapnel, or someone losing control of their vehicle (Id. at 102-103).

As stated previously, evidence must establish that the parties intended the release to apply to the particular conduct that caused the harm. This Court has previously denied a motion for summary judgment after determining that the particular harm suffered by a plaintiff was not within the foreseeable injuries contemplated by a general release. See Hallman v. Dover Downs, Inc., C.A. No. 85-618-CMW (D.Del, 1986).

Mr. Rollison was injured during the pre-race activity. However, the cause of his injury was not a risk typically or normally involved in racing, or pre-race activity. Mr. Rollison was not injured by a racing driver, rather he was injured by a child steering a racing vehicle. The child driving the vehicle was not contemplated when Mr. Rollison signed the release. As such, interpreting the release to include unanticipated acts of negligence creates an unconscionable document.

As this Court found in McDonough, in conjunction to the applicability of a release to a bicycle race and denying defendant's Motion for Summary Judgment, the terms of the release must be understood by the plaintiff or a reasonable person in the plaintiff's position. McDonough v. National Off-Road Bicycle Assn., C.A. No. 95-504-SLR. The Court limited the

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

10

applicability of the release to hazards associated to the race that were obvious or reasonably foreseeable. McDonough at 5, citing Bennett v. United States Cycling Federation, 239 Cal. Rptr. 55, 58 (Cal.Ct.App.1987).

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

### C. Defendants Interpretation of the General Release Would Violate Public Policy

Defendants' interpretation of the release would violate public policy. Defendants argue that the scope of the release is broad and inclusive and applies to track operators, track owners, and owners of the premises for any and all loss or damage arising out of or related to the event. However, a child steering a vehicle does not arise out of or relate to the event of drag-racing.

It would be a different matter if Mr. Rollison had been injured by a vehicle, driven by a participant, which lost control during the race and struck plaintiff. Or if an adult driver had been steering the vehicle that hit Mr. Rollison. However, that is not the facts in this case. Mr. Rollison was injured by a child allowed to steer a racing vehicle.

Defendants' argument that no employee of Blue Diamond was involved with the vehicles at the moment of the accident is without merit. First, defendants do not provide documentary support for this argument. Second, the extent of Blue Diamond and Parkway Gravel roles in the mud-racing event is still a subject of discovery. Third, the deposition of defendant, Jack Brady, has not occurred and he is likely in the best position to explain the relative responsibilities of Blue Diamond and Parkway Gravel. Fourth, the contract that may or may not be discoverable, depending on whether it defendant Jack Brady has a copy, and depending on whether any contracts were ever generated.

Therefore, defendants' interpretation of the release is against public policy by seeking to include unforeseeable acts of negligence.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

## III. THE AFFIRMATIVE DEFENSE OF ASSUMPTION OF THE RISK IS NOT SUBJECT TO DISPOSITON THROUGH SUMMARY JUDGMENT

As a matter of law, the affirmative defense of assumption of the risk is not appropriate for summary judgment. In DiOssi v. Maroney, the Delaware Supreme Court held assumption of the risk is "fact intensive and not subject to disposition, as a matter of law, through summary judgment." See DiOssi v. Maroney, Del.Supr., 548 A.2d 1361, 1368 (1988), citing Binsau v. Garstin, Del.Supr., 177 A,2d 636, 639 (1962).

Defendants cite no case law in support of their position that assumption of the risk should be found to be a basis for summary judgment.

Alternatively, the argument that Mr. Rollison assumed the risk is a corollary to the previous argument that plaintiff could execute a release that included a release for unforeseeable negligence. Mr. Rollison could not assume the risk of an unforeseeable action by a twelve year old.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

13

## IV. CONTRIBUTORY NEGLIGENCE, OR FAILURE TO KEEP A PROPER LOOKOUT, IS NOT AN APPROPRIATE BASIS FOR A MOTION FOR SUMMARY JUDGMENT

As a matter of law, the affirmative defense of contributory negligence, or failure to keep a proper lookout, is also not appropriate for summary judgment. In DiOssi, the court stated that assumption of the risk, and contributory negligence, are "...not subject to disposition...through summary judgment." See DiOssi v. Maroney, Del.Supr., 548 A.2d 1361, 1368 (1988), citing Binsau v. Garstin, Del.Supr., 177 A,2d 636, 639 (1962).

Again, defendants cite no case in support of their position that contributory negligence should be found to be a basis for summary judgment. Alternatively, the argument that Mr. Rollison failed to keep a proper lookout is a corollary to the previous argument that plaintiff could execute a release that included a release for unforeseeable negligence. Mr. Rollison could not keep a proper lookout for an unforeseeable action by a twelve year old.

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

## CONCLUSION

WHEREFORE, for the reasons stated herein, plaintiff, Delbert E. Rollison, respectfully requests this Court deny defendants, Blue Diamond, LLC, and Parkway Gravel, Inc., motion for summary judgment as a matter of law, or in the alternative as not ripe for consideration.

                                      DOROSHOW, PASQUALE,
                                      KRAWITZ & BHAYA

                     By:    /s/ Matthew R. Fogg
                           ARTHUR M. KRAWITZ (ID No. 2440)
                           MATTHEW R. FOGG (ID No. 4254)
                           1202 Kirkwood Highway
                           Wilmington, DE 19805
                           (302) 998-0100
DATED: 12/11/2006          Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DELBERT E. ROLLISON, :
: C.A. No.: 06-159 SLR
:
Plaintiff, :
:
v. :
:
NEAL SHOEMAKER, as parent and legal :
guardian of TRAVIS SHOEMAKER, :
NEAL SHOEMAKER, individually, :
TRAVIS SHOEMAKER, individually, :
BLUE DIAMOND, LLC, a Delaware :
corporation, HOUGHTONS AMUSEMENT :
PARK, LLC, a Delaware corporation, :
JACK BRADY, individually and d/b/a KSR :
MOTOR SPORTS, and PARKWAY :
GRAVEL, a Delaware corporation, :
:
Defendants. :

### CERTIFICATE OF SERVICE

I, Matthew R. Fogg, Esquire, hereby certify that I have this 11th day of December, 2006, e-filed or mailed two (2) true and correct copies of the following document(s) addressed to the person(s) listed below:

### DOCUMENT:

Plaintiff's Response to Defendant, Blue Diamond's, Motion for Summary Judgment

### PERSON:

| | |
|---|---|
| Sherry Ruggiero-Fallon, Esquire | Roger A. Akin, Esquire |
| Tybout, Redfearn & Pell | Akin & Herron, P.A. |
| 750 S. Madison Street, Suite 400 | 1220 North Market Street, Suite 300 |
| P.O. Box 2092 | P.O. Box 25047 |
| Wilmington, Delaware 19899 | Wilmington, Delaware 19899 |

Doroshow, Pasquale,
Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington, Delaware 19805
302-998-0100

16

| | |
|---|---|
| Jack Brady, *Pro Se*<br>P.O. Box 1701<br>Paoli, Pennsylvania 19301 | Colin M. Shalk, Esquire<br>Casarino, Christman & Shalk<br>800 North King Street, Suite 200<br>P.O. Box 1276<br>Wilmington, Delaware 19899 |

DOROSHOW, PASQUALE,
KRAWITZ & BHAYA

By: /s/ Matthew R. Fogg
ARTHUR M. KRAWITZ (ID No. 2440)
MATTHEW R. FOGG (ID No. 4254)
1202 Kirkwood Highway
Wilmington, DE 19805
(302) 998-0100
Attorneys for Plaintiff

DATED: 12/11/2006